UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-00019-H

JEFFERSON AUDIO VISUAL SYSTEMS, INC.                                PLAINTIFF

V.

GUNNAR LIGHT                                                        DEFENDANT

**MEMORANDUM OPINION AND ORDER**

The matter presently before the Court is Defendant, Gunnar Light's motion to dismiss three of the six counts in Plaintiff, Jefferson Audio Video Systems, Inc.'s ("JAVS") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.[1] For the following reasons, the Court will sustain the motion.

I.

JAVS is a Kentucky corporation in the business of providing audiovisual equipment and services to create records in court systems. On May 26, 2010, JAVS hired Light as its Manager Director of International Sales. The letter offering Light the position was contingent upon, among other things, his execution of the Ownership, Non-Disclosure, Confidentiality, and Non-Competition Agreement (the "Agreement"), which he signed.

---

[1] The Court has already ruled on part of this motion. The substance of that ruling dealt with Light's alternative argument requesting the Court to dismiss the Complaint in its entirety based on the anticipatory suit exception to the first-to-file rule. Light argued that JAVS' January 11, 2012 Complaint filed in this Court, one day before Light filed suit in Arizona's federal court, was done in bad faith while settlement negotiations were ongoing and after JAVS received advanced notice that the Arizona suit would be filed on January 12, 2012. In a previous Memorandum Opinion and Order, this Court denied Light's motion to dismiss on these grounds finding that the relevant forum-selection clause governed and that the anticipatory suit exception was inapplicable. Pursuant to a stipulation of the parties, the United States District Court for the District of Arizona transferred Case No 2:12-CV-00070-PGR to this Court on June 25, 2012. Presently, all actions between the parties have been consolidated. *See* ECF No. 12.

This lawsuit stems largely from an incident that ultimately led to Light's termination. In March 2011, as part of his employment, JAVS asked Light to travel to South Africa to attend a sales meeting with JAVS' sale agent in South Africa ("JAVS Africa"). On the table was a prospective sale to South African courts of approximately 2,500 JAVS systems. If consummated, this sale would result in approximately $20 million in gross revenue for JAVS. Importantly, JAVS Africa is not contractually bound to exclusively sell JAVS' products, but had been doing so for over a decade. JAVS maintains that a good relationship between JAVS and JAVS Africa is crucial to JAVS' success in the South African market.

During the March 2011 sales meeting between JAVS and JAVS Africa, Light allegedly made a number of defamatory statements about JAVS to JAVS Africa. Specifically, Light allegedly stated, among other things, that: JAVS and its co-owner Jared Green were "unorganized;" "they don't know what's going on;" "they've made a mess of things;" "I unfortunately am stuck with this Company that is very dysfunctional;" and the fact that JAVS had gotten "things going is a miracle." ECF No. 1. JAVS contends that these statements had no legitimate business purpose.

Ultimately, the sales negotiations resulted in a $150,000.00 sale, significantly less than what JAVS anticipated. JAVS alleges that Light's disparaging statements may have been the cause of this dismal sale. JAVS terminated Light for cause shortly thereafter, on March 13, 2011.

After a period of settlement negotiations between the parties, JAVS filed this lawsuit on January 11, 2012, in anticipation of Light filing suit in Arizona the following day. The Complaint advanced six Counts: (1) defamation; (2) tortious interference with actual and prospective business and economic relationships; (3) breach of fiduciary duty; (4) trade

disparagement; (5) fraudulent misrepresentation; and (6) breach of contract. JAVS seeks damages, punitive damages, attorneys' fees and costs, and all other relief to which it may be entitled. Light has moved to dismiss Counts One, Four and Five.

To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The Court must view the allegations in the complaint in the light most favorable to the plaintiff, treating all well-pleaded facts as true, but need not accept bare legal conclusions as definitive. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). The Agreement contains a choice of law provision requiring that all matters arising out of or relating to the Agreement be governed by and construed pursuant to Kentucky law. ECF No. 1-2.

II.

In Count One, JAVS alleges that as a result of Light's false and defamatory statements to JAVS Africa, it suffered monetary and reputational damage. Additionally, JAVS argues that the defamatory statements were made willfully, maliciously and with knowledge of their falsity, and as such, JAVS is further entitled to recover punitive damages.

To establish a cause of action for defamation in Kentucky, the plaintiff must prove four elements: "defamatory language, about the plaintiff, which is published, and which causes injury to reputation." *Gibson v. Raycom TV Broad. Inc.*, 2012 WL 5372104, *3 (Ky. Ct. App. Nov. 2, 2012) (quoting *Columbia Sussex Corp. Inc. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981).

Statements are deemed defamatory when they tend to "(1) bring a person into public hatred, contempt or ridicule; (2) cause him to be shunned or avoided; or, (3) injure him in his business or occupation." *McCall v. Courier-Journal & Louisville Times Co.,* 623 S.W.2d 882, 884 (Ky. 1981).

Kentucky separates defamation actions into those that are actionable per se and actionable per quod. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 794 (Ky. 2004).[2] The principle difference between the two theories is that in a defamation per se action, the law presumes damages, whereas in a defamatory per quod action, no such presumption exists. *Toikka v. Jones*, 2013 WL 978926, *2 (E.D. Ky. Mar. 12, 2013).[3] The Court will analyze JAVS' defamation claim through both the lens of a per se and per quod action.[4]

A.

Language is determined to be per se defamatory when the words are "actionable on their face – without proof of extrinsic facts or explicatory circumstances." *Stringer*, 151 S.W.3d at 794 (internal citation omitted). As such, a plaintiff need not prove special damages because injury to the reputation is presumed. *Id.* Statements are slanderous per se when they

> tend to expose the plaintiff to public hatred, ridicule, contempt or disgrace, or to induce an evil opinion of him in the minds of right-thinking people and to deprive him of their friendship, intercourse and society. But it is not necessary that the words imply a crime or impute a violation of laws, or involve moral turpitude or immoral conduct.

---

[2] Defamatory speech is further delineated by its medium: slander involves oral discriminatory statement. In the case *sub judice*, Light's alleged defamation came in the form of slander.

[3] Another difference between the two actionable types of slander is the court's approach in analyzing the defamatory nature of the statement: "Slander per se is accomplished by the very words spoken. Slander per quod is defined as slander determined by the interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one." 50 AM. JUR. 2D *Libel and Slander* § 140 (2013).

[4] It is worth emphasizing that in the context of an allegedly defamatory statement lodged at a corporation, a per se analysis may be inapposite since any damage from the statement therefrom should be reflected in a pecuniary loss, and therefore be brought as a per quod action. In other words, damages for defamation per se aimed at a corporation must be proved, so the distinction between the two types of defamation is largely unimportant.
> The doctrine of defamation per se grew out of a need to provide individuals with a remedy for statements which damaged their reputations by the very nature of the words where the individuals could not prove actual damages . . . . Businesses do not have personalities that are hurt so intangibly. If a business is damaged, the damage is usually reflected in the loss of revenues or profits. Therefore, courts should be very cautious about labeling as defamatory per se comments made about a corporation or its products.

*CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1084 (W.D. Ky. 1995).

*CMI, Inc.*, 918 F.Supp. at 1083. Courts are to view the "publication as a whole to gauge the effect on the average reader." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 554 (W.D. Ky. 2005) (quoting *Ashby v. Hustler Magazine, Inc.*, 802 F.2d 856, 858 (6th Cir. 1986)). "The words must be given their ordinary, natural meaning as defined by an average lay person. The [words] must be stripped of all innuendos and explanations." *CMI, Inc.*, 918 F. Supp. at 1084.

However, not all alleged defamatory statements are actionable. For instance, truth is a complete defense to a defamation claim, as is an expression of opinion. *Biber v. Duplicator Sales & Serv., Inc.,* 155 S.W.3d 732, 737 (Ky. Ct. App. 2004). Nonetheless "[a] defamatory communication may consist of a statement in the form of an opinion, but [be actionable] if it implies the allegation of undisclosed defamatory fact as the basis for the opinion." *Yancey v. Hamilton,* 786 S.W.2d 854, 857 (1989). *Contra Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 23 (1990)(holding that opinions using "loose, figurative, or hyperbolic language," as opposed to provable assertions of fact, cannot provide the basis for a defamation action).

JAVS contends that Light's statements to JAVS Africa constituted per se defamatory remarks. Light counters that the statements upon which JAVS bases its defamation claim are protected expressions of opinion. The Court agrees with Light. Though an opinion can constitute a defamatory remark in limited circumstances, the statements at issue were matters of pure opinion. The statements are not laden with objectively verifiable assertions, but rather were mere opinions incapable to expressing or implying facts.[5] Stating that JAVS and its co-owner were "unorganized" and "dysfunctional" is simply voicing subjective thought. Those kind of

---

[5] Assumingly, Light's statements to JAVS Africa may constitute intra-corporate communication and would therefore be privileged. *See Dossett v. New York Mining & Mfg. Co.*, 451 S.W.2d 843, 846 (1970) (recognizing a privilege for "discussions and communications within the company which are necessary to [its] proper function"). However, the parties did not address this particular argument, and it that appears JAVS Africa was not contractually bound to represent JAVS. Regardless, the statements are per se inactionable as they are protected expressions of opinion.

5

generalized, nebulous views do not necessarily reflect reality, but rather, more likely express Light's own assessment of JAVS. The statements do not malign JAVS in a way subjects it to "hatred, ridicule or disgrace." *CMI, Inc.*, 918 F.Supp. at 1084. Accordingly, Light's statements do not constitute defamation per se.

B.

Previously, this Court had the occasion to discuss the contours of a defamatory per quod action:

> In a per quod action, the words themselves may or may not be defamatory. Courts focus not upon the actual meaning of the words but on the extrinsic facts which explain the meaning of the communications. More important for the Court's analysis here is that historically, damages to corporate reputation may be proven only by loss of profits caused by the defamation. The pecuniary loss must be a direct and proximate result of the defamation.

*Id.* at 1083. Again, "[s]lander per quod is determined by interpretation of the listener, through innuendo, as between an innocent or harmless meaning and a defamatory one." 50 AM. JUR. 2D *Libel and Slander* § 142 (2013).

JAVS alleges that Light's defamatory statements to JAVS Africa caused it to lose a $20 million sale. Even assuming that JAVS could actually prove this pecuniary loss such that Light's statements could be per quod actionable, the Court struggles to find the language defamatory. JAVS maintains that context here is key; it argues that the recipient of Light's comments would likely assume that, as Managing Director of International Sales, Light has intimate knowledge of JAVS and, therefore, had particular and articulable reasons for believing the statements he made. In that respect, JAVS contends that the statements are not opinions, but are rather factual in nature. As discussed above, the Court finds that the statements, even if spoken by someone with apparent authority to speak on behalf of JAVS, are merely opinions. The statements are not objectively capable of proof or disproof, and accordingly, JAVS Africa

could not rationally perceive such statements as conveying actual facts. Though Light's opinions were generally negative, the statements are not critical enough or specific enough to be actionable as defamatory.

### III.

JAVS' trade disparagement claim in Count Two is largely based off the factual allegations of its defamation claim. JAVS alleges that Light's made false and defamatory statements to others concerning the quality of JAVS' management and business for the specific purpose of harming JAVS' business reputation. As such, JAVS argues that Light should be held liable for trade disparagement.

"Disparagement, or trade libel, is akin to defamation under Kentucky law." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 269 (6th Cir. 2010); *see also Kenney v. Hanger Prosthetics & Orthotics, Inc.*, 269 S.W.3d 866, 872 (Ky. Ct. App. 2007) ("Trade libel involves disparaging and false assertions about the quality of one's property rather than title to it."). To maintain a claim of trade disparagement, a plaintiff must show that the defendant "publishe[d] a false statement that disparages the quality of [plaintiff's] land, chattels or intangible things, that the publisher should recognize as likely to result in pecuniary loss to the other through the conduct of a third person in respect to the other's interests in the property." *Kenney*, 269 S.W.3d at 873 (internal quotation omitted). In sum, a claim for trade disparagement denigrates the quality of property.

As a threshold matter, Light's alleged statements did not bear on the quality of JAVS' actual, physical product: audiovisual equipment. Nevertheless, arguably JAVS is somewhat of a quasi-service corporation, as evidenced by the need to send a sales representative to South Africa to facilitate a deal, so part of its "product" is the services it provides. However, as discussed

7

above, the Court finds that the statements at issue do not rise to the level of a cognizable defamatory action. As such, JAVS' parallel trade disparagement claim likewise fails.

IV.

Lastly, in Count Five, JAVS advances a common law claim for fraudulent misrepresentation. JAVS claims that for several months following Light's May 9, 2011 termination from JAVS, Light falsely represented on social media outlets, such as LinkedIn, that he held the position as JAVS' International Managing Director after his date of termination.[6]

It is well-settled in Kentucky that to successfully state a claim for fraudulent misrepresentation, a plaintiff must establish by clear and convincing evidence that a defendant "a) made a material representation; b) which was false; c) which was known to be false or made recklessly; d) which was made with inducement to be acted upon; e) which plaintiff acted in reliance upon; and f) which caused plaintiff injury." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.,* 113 S.W.3d 636, 640 (Ky. Ct. App. 2003). In addition, a plaintiff's reliance must be reasonable. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

Federal Rule of Civil Procedure 9(b) establishes a heightened pleading standard for claims of fraud. Under Rule 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Therefore, at the very least, a plaintiff must allege *some* facts indicating how it satisfies each element of a fraud claim. *See Critical Care Specialist, Inc. v. Fukuda Denshi Co., Ltd.*, 2009 WL 2913888, *2 (W.D. Ky. Sept.

---

[6] On three different occasions, counsel for JAVS, Elizabeth Gray, contacted Light to request that he update any social media and professional networks to remove any indication that he was currently employed at JAVS. Her May 9, 2011 and May 26, 2011, Light met these requests with brief responses, stating that he intended to promptly update his employment profile. Shortly after Gray's third request on June 3, 2011, which indicated JAVS would file a formal complaint with LinkedIn concerning Light's profile, Light changed his page to remove any alleged misrepresentation as to his employment status.

8

9, 2009) (dismissing a fraud claim due to a deficient complaint that "contained no statements" as to certain elements of a fraud claim).

The Court finds that JAVS has failed to plead sufficient allegations as to the reasonable reliance element in order to survive a motion to dismiss. JAVS' pleadings are completely devoid of any factual allegations that indicate it reasonably relied on Light's misrepresentation. JAVS admits as much in its Response, stating that it "is not asserting that it was defrauded by Light but, instead, is making a claim that Light's fraudulent misrepresentation to the world damaged JAVS." ECF No. 8. Still, JAVS has failed to assert facts that it reasonably relied on Light's misrepresentation *itself*, a clear requirement to maintain a Kentucky common law fraud claim. *See Rivermont Inn, Inc.* 113 S.W.3d at 640 (requiring that "plaintiff acted in reliance" upon the alleged misrepresentation); *CMI, Inc.*, 918 F. Supp at 1086 ("The essence of any misrepresentation claim mandates that the defendant *misrepresented a material fact to the plaintiff* and that the *plaintiff relied thereon*, and that the *plaintiff's reliance caused the consequential damages*."). The factual allegations as asserted do not sound in a common law fraud claim, and as such, the claim fails as matter of law.[7]

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Counts One, Four and Five is SUSTAINED.

---

[7] In *CMI, Inc.,* the plaintiff brought a similar claim, advocating that the defendant committed fraud on potential third-party customers. This Court noted,
> [c]iting no case law in support of its argument, [plaintiff] urges this Court to expand the scope of an actionable fraud claim by permitting it to assert a claim based upon third party rights. [Plaintiff] wants to stand in the place of those customers with reference to the issues of intentional misrepresentation and reliance upon the same. While novel in its genesis, Kentucky courts have not recognized such an argument. [Plaintiff] cites no persuasive authority to suggest that it should.

918 F. Supp at 1086 (internal citation omitted).

IT IS FURTHER ORDERED that per Court Order, ECF No. 20, within twenty-one (21) days after this ruling, Defendant will file his Answer and Counterclaim. Plaintiff will then have twenty-one (21) days after the Answer and Counterclaim are filed to file its Reply to the Counterclaim. The parties shall submit an Agreed Litigation Plan and Discovery Schedule Outline thirty (30) days after Plaintiff files its Reply to the Counterclaim.

cc: Counsel of Record